**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHAEL E. WRIGHT,**

      **Plaintiff,**

      v.

**COLUMBUS POLICE DEPARTMENT, et al.,**

      **Defendants.**

Case No. 2:12-cv-614
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

### OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment filed by Defendant Adam Barton. (ECF No. 14.) For the reasons set forth below, the Court finds the motion well taken.

### I.  Background

On May 17, 2012, Defendant Adam Barton, a City of Columbus police officer, was on patrol in a marked police cruiser. Shortly before 11:00 p.m., Barton and other officers were dispatched to a Columbus location on a "shots fired" report. Upon arriving at the area, a known drug locale to which Barton had been dispatched before for other shots fired calls, Barton noticed a silver Chevrolet Impala traveling quickly from the location. Barton pulled his cruiser in front of the vehicle to effectuate an investigatory stop. As Barton walked toward the Chevrolet Impala, however, the vehicle pulled away despite the officer's commands to stop.

The driver of the Chevrolet Impala was Plaintiff, Michael Wright. Employing their overhead lights, several police cruisers followed Wright. Barton took the lead position in the pursuit, which lasted for approximately three minutes. During this time, Wright ran four red lights, reached speeds in excess of 60 miles per hour, went left of double yellow lines, cut

through a gas station at a high rate of speed, and drove through a construction zone at a high rate of speed. Wright then turned into a driveway, exited his still-running vehicle, and proceeded toward a house despite Barton ordering him to stop. Wright testified at his deposition that he emerged from his vehicle with his hands raised. Videotape evidence submitted by Barton, however, indicates that after Wright exited the Chevrolet Impala, he did not raise his hands and in fact kept one hand near the waistband of his pants while he went toward and then into the house.

     The officer pursued Wright into the house, where Wright sat on a couch and put his hands between the couch cushions. At that point, Barton advised Wright that he was under arrest and allegedly ordered Wright to show his hands and to get on the ground. When Wright did not comply, Barton grabbed Wright's right arm to handcuff him. Wright did not comply with orders to place his hands behind his back. Barton then punched Wright two to three times and took the man to the floor, but Wright continued to keep his left arm under the couch cushion and pulled his right arm away from the officer. At that point Barton used his flashlight to strike Wright twice in the supra scapula nerve area of his right shoulder. Wright put his hands behind his back, and Barton handcuffed him.

     Barton and another officer escorted Wright from the house. Wright, proceeding as dead weight, stumbled and fell to the ground. The officers picked him up and moved him to Barton's cruiser, where Wright stiffened his body and refused to get into the cruiser. Wright was then placed into the cruiser, and once inside he refused to identify himself or speak to the officers. The officers eventually identified Wright and proceeded to take him to police headquarters, where he refused to be fingerprinted and photographed. Wright ended up in jail.

An inventory search of Wright's impounded vehicle resulted in the discovery of the lower receiver of a hand gun, two magazines with 26 rounds of ammunition, and a bag of marijuana. Wright was charged with a number of crimes under the Columbus City Code and eventually pled guilty in state court to the charge of resisting arrest. Thereafter, Wright, proceeding *pro se*, filed the instant action in July 2012. Seeking damages in excess of $10 million, Wright asserts claims under 42 U.S.C. § 1983 against the Columbus Police Department and Barton, as well as an unidentified officer, for false arrest and for excessive force.[1] (ECF No. 3.) Barton filed a motion for summary judgment, to which Wright failed to file a response.[2] (ECF No. 14.) The period for briefing on the motion has closed, and the motion is ripe for disposition.

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the

---

[1] The Complaint does not specifically reference § 1983, but both this Court and Barton have broadly construed the *pro se* pleading to present the claims identified. Wright did not file a response to the motion for summary judgment disputing this construction.

[2] The Court notes that although only Barton is listed as the movant on the motion for summary judgment, the motion asserts that the Columbus Police Department "is not *sui juris* and is, therefore, not a party to this action." (ECF No. 14, at Page ID # 65.) It is correct that a police department cannot sue or be sued. But rather than simply declaring itself a non-party and deciding that it consequently need not do anything in a case, surely the better practice for a police department named as a defendant is endure the distinctly meager inconvenience of joining in or filing its own motion. Other police departments have, for example, taken the time to file a motion to dismiss or a motion for summary judgment. *See, e.g., Saunders v. Whitehall Police Dep't*, No. 2:11-cv-00517, 2013 WL 146369, at *2 (S.D. Ohio Jan. 14, 2013); *Lathan v. City of Cleveland*, No. 1:12 CV 37, 2012 WL 1708762, at *2 (N.D. Ohio May 15, 2012); *Yahnke v. Nixon*, 2010 WL 3420650, at *1 (N.D. Ohio Aug. 27, 2010); *Hale v. Vance*, 267 F. Supp. 2d 725, 727, 737 (S.D. Ohio 2003); *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002). Because the motion *sub judice* raises the dispositive defense, the Court will construe the motion as encompassing the Columbus Police Department as well.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, in order to prevail on his § 1983 claims, Wright must show that, while acting under color of state law, Defendants deprived him of a right secured by the Federal Constitution or laws of the United States.  *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

Wright cannot prevail on either of his § 1983 claims due to the doctrine of qualified immunity.  Such immunity operates under certain circumstances to shield from civil liability governmental officials, such as police officers, who are performing official duties.  *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003).  The affirmative defense is meant to safeguard an official's proper decision-making process and offers that party potential relief from frivolous suits.  *See D'Agastino v. Warren*, 75 F. App'x 990, 993 (6th Cir. 2003).  It "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addition to shielding officials from liability, qualified immunity may entitle the official not to stand trial or face the other burdens of litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, courts therefore traditionally followed a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.  Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)); *see*

*also Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).  This analytic approach has at times also been characterized by various appellate panels as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights?

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).  *See also Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (restating test); *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known.").  Other appellate panels have found the third step to be redundant.  *Kijowski v. City of Niles,* 372 F. App'x 595, 598 n.7 (6th Cir. 2010).  Regardless of this latter point, courts are now permitted to depart from the sequential analysis and address either prong of the two-part qualified immunity inquiry first.  *Williams v. Ingham*, 373 F. App'x 542, 547 (6th Cir. 2010); *Kijowski,* 372 F. App'x at 598.

It is also important to note that the doctrine of qualified immunity recognizes that an official can be found to have violated the constitution, but still be granted immunity for *reasonable* mistakes as to the legality of his or her action.  *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing the particular conduct involved.  The contours of the right must be sufficiently clear

that a reasonable official would understand that what he or she is doing violates that right.  *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Court will therefore begin its excessive force analysis by examining whether a constitutional violation has occurred.  The Sixth Circuit has long recognized that "[i]t is well established that any arrest without probable cause violates the Fourth Amendment."  *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (citing *Crockett*, 316 F.3d at 580).  Thus, a lack of probable cause to arrest Wright would mean that a constitutional violation had occurred.  There is no dispute that at the time of the incident at issue, the right to be free from an arrest without probable cause was a clearly established right of which a reasonable person would have known.  *See Beck v. Ohio*, 379 U.S. 89, 90-91 (1964) (recognizing that an arrest without probable cause violates the Fourth Amendment);  *Parsons*, 533 F.3d at 504 (same).

There is no constitutional violation upon which Wright can sustain his false arrest claim.  As noted, he pled guilty in the state court to resisting arrest.  Accordingly, Wright is estopped from asserting his claim for false arrest.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988).  Absent limited exceptions that are not asserted in this case, an undisturbed conviction creates a presumption of probable cause that vitiates a false arrest claim.  *See, e.g., Harris v. Bornhorst*, 513 F.3d 503, 520-21 (6th Cir. 2008) (malicious prosecution); *Jacob v. Township of West Bloomfield*, 192 F. App'x 330, 334 (6th Cir. 2006) (illegal search and seizure); *Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004) (malicious prosecution); *Short v. Tackett*, 100 F.3d 957, 1996 WL 637497, at *2 (6th Cir. 1996) (unpublished table decision) (illegal search and seizure).  Even if Wright's guilty plea (and

its admission of the facts underlying that crime) did not conclusively resolve the false arrest claim, however, Barton would still be entitled to summary judgment on that claim.

This is because either probable cause to arrest Wright existed or Barton was objectively reasonable in thinking it did. For probable cause to arrest to exist, the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). Put simply, "[a] police officer has probable cause if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (internal quotation and citations omitted). Even an arrest based upon probable cause where the suspect is later found to be innocent will not meet the criteria for a § 1983 action. *See Criss*, 867 F.2d at 262 (citing *United States v. Covelli*, 738 F.2d 847, 854 (7th Cir.), *cert. denied*, 469 U.S. 867 (1984).

Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on " 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.' " *Crockett*, 316 F.3d at 580 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). The existence of probable cause is a jury question, unless

there is only one reasonable determination that is possible. *Crockett*, 316 F.3d at 581; *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Only one reasonable determination is possible here. Wright fled from the police, disobeyed orders to stop, and then disobeyed orders to cease resisting arrest, which engendered the resisting arrest charge. But even if there was lack of probable cause to support this charge, Barton would still be entitled to qualified immunity.

If Wright's arrest were indeed a reasonable mistake on the part of Barton, the officer is entitled to qualified immunity. *See Saucier*, 533 U.S. at 206. The Sixth Circuit has explained that "probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993). Thus, "under § 1983, 'an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.' " *Parsons*, 533 F.3d at 501 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). A great deal of discretion is afforded police officers when evaluating reasonableness in such situations so that "[i]f the officer's mistake as to what the law requires is reasonable . . . [he] is entitled to the immunity defense." *Magrum v. Meinke*, 332 F. Supp. 2d 1071, 1078 (N.D. Ohio 2004). *See also Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) ("A police officer may be entitled to qualified immunity, obviously, even though he has in fact violated the plaintiff's rights; 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" (citations omitted)).

Because a reasonable officer in Barton's position could have believed that he had probable cause to arrest, Barton remains entitled to qualified immunity. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (finding that qualified immunity existed where a an officer acted reasonably, even if erroneously). It is Wright's burden to show otherwise, and based on the evidence and arguments before this Court, Wright has failed to demonstrate that Barton is not entitled to qualified immunity on the false arrest claim.

Wright's guilty plea does not bar Wright's excessive force claim. *McCartt v. Keyes*, 194 F.3d 1313, 1999 WL 1000829, at *5 (6th Cir. 1999) (unpublished table decision). This claim nonetheless also fails due to qualified immunity.

Prior to the events at issue in this case, the United States Supreme Court established that the use of force is unconstitutional if it is excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). It was thus settled that at the time of the underlying events here that the use of force must be reasonable; if no force was required, then no force was necessary. *See id*. at 394; *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997) (citing *Adams v. Metiva*, 31 F.3d 375, 384-85 (6th Cir. 1994)). Accordingly, to determine whether qualified immunity applies, this Court must determine whether police conduct here was reasonable. Courts have indicated the difficulty of this determination, stating that

> ascertaining the reasonableness of force used is not capable of precise definition or mechanical application, [and] the analysis focuses on the specific facts of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

*Magrum*, 332 F. Supp. 2d at 1078 (quoting *Graham*, 490 U.S. at 396). The *Magrum* court goes on to state that "[t]he 'reasonableness' of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Thus, a determination of whether the amount of force used was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ewolski v. City of Brunswick*, 287 F.3d 492, 507-08 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). *See also D'Agastino*, 75 F. App'x at 994. The "objective reasonableness standard" applied in this inquiry asks whether a reasonable officer would conclude that the level of force used was appropriate. *Graham*, 490 U.S. at 396-97. This standard balances the cost to the individual against the government's interest in effectuating a seizure; it contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396 ).

Here, Barton and his fellow officers were dispatched to a known drug area on a shots fired call. This presents circumstances in which a serious crime could likely be at issue. As soon as the officers encountered Wright, he fled. A high speed case ensued in which Wright actively attempted to lose the officers and evade capture and arrest. Once out of his car, Wright continued to disobey officer commands to cease his flight, to stop resisting arrest, and to show his hands. Wright's refusal to show his hands, when viewed in the context of the shots fired call and his attempt to evade contact with the police, reasonably suggested that Wright posed an immediate threat to the safety of the officers or others. It is no stretch to say that Wright's

noncompliant conduct suggested that he possibly had a gun in his waistband or between the couch cushions. Barton's on-the-spot judgment about the level of force necessary in light of these particular circumstances warrants deference. His judgment was reasonable, even if no gun was discovered on Wright inside the house.

The Sixth Circuit has cautioned that "[s]ummary judgement on a claim of excessive force is inappropriate where the parties dispute virtually all of the essential facts surrounding the excessive force claim because it impossible to determine whether the force used was reasonable without choosing between the parties sharply different factual accounts." *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991). But there is no real dispute here over virtually all of the essential facts involving Barton's application of measured, progressive force used to obtain compliance and negate a potential threat situation. In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendant is] not entitled to qualified immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Wright has produced no evidence and has not even filed a response to Barton's motion seeking qualified immunity. Moreover, even if Barton erred in his handling of the incident, any possible error was understandable in light of the uncertainties that pervaded the situation so that no reasonable juror could conclude based on these facts that his actions were objectively unreasonable. In other words, qualified immunity applies.

Barton is thus entitled to summary judgment on the grounds that the amount of force involved here was reasonable, thereby precluding any deprivation of a constitutional right, and

on the grounds that he is entitled to qualified immunity on the claim asserted against him in his individual capacity.

### III.  Conclusion

The Court **GRANTS** the motion for summary judgment.  (ECF No. 14.)  The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

                                          /s/ Gregory L. Frost
                                   GREGORY L. FROST
                                   UNITED STATES DISTRICT JUDGE